# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RONDALE D. TENNER,

      Plaintiff,

v.

BENJAMIN JACKSON, JACKELINE VELEZ, and MONIQUE STACKER-WILLIAMS,

      Defendants.

Case No. 18-CV-232-JPS

**ORDER**

   On February 28, 2018, the Court screened Plaintiff's *pro se* complaint and permitted him to proceed on a claim of inadequate conditions of confinement, in violation of his Eighth Amendment rights. (Docket #8). On October 1, 2018, Defendants moved for summary judgment. (Docket #21).That motion is now fully briefed. For the issues explained below, the Defendants' motion for summary judgment will be granted, and the case will be dismissed.

**1. LEGAL STANDARD**

   Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The

court construes all facts and reasonable inferences in the light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that [his] case is convincing, [he] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

**2.    RELEVANT FACTS[1]**

Plaintiff is an inmate at Green Bay Correctional Institution ("GBCI") who was temporarily housed at Milwaukee County Jail ("MCJ") from January 18 to January 23, 2018 so that he could attend court proceedings in Milwaukee. He was assigned to Pod 3A, which is general population intake housing. Defendant Benjamin Jackson ("Jackson") was a correctional officer who worked in Pod 3A on January 21, 2018. Defendant Monique Stacker-Williams ("Stacker-Williams") was a correctional officer who worked in Pod 3A on Monday, January 22, 2018.[2]

---

[1] In light of the Seventh Circuit's mandate that "*pro se* submissions are to be liberally construed," combined with that requirement that facts on summary judgment be viewed in the light most favorable to the non-movant (who, in this case, is *pro se*), the Court declines Defendants' request that it disregard Plaintiff's response to their proposed findings of facts because it does not comply perfectly with the strictures of Civil Local Rule 56(b)(2)(B). *See Blake v. United States*, 841 F.2d 203, 205 (7th Cir. 1988).

[2] Plaintiff acknowledges that Jackeline Velez is not a proper party to the action, (Docket #32 at 1), therefore she will be dismissed. Plaintiff argues that he was denied the opportunity to amend his complaint to include the correct defendant because he was not told that Velez was a woman until the discovery

Pod 3A is filled with inmates who are staying short-term at MCJ. The schedule in Pod 3A runs as follows: the day begins at 7:00 a.m., at which point inmates are permitted to leave their cells and/or clean their cells. The day room of the pod is opened shortly thereafter for breakfast and activities. Inmates may spend most of their time in the day room, but must return to their cells three times throughout the day for counts and officer shift changes: from 11:00 a.m. to 12:00 p.m.; 1:50 p.m. to 3:00 p.m., and 5:00 p.m., to 6:00 p.m. They are required to return to their cells for the night at 9:45 p.m. Inmates typically eat meals in the day room unless there are safety or security concerns that require the day room to close. In total, inmates are permitted to spend roughly half of the day outside of their cells.

On January 21 at around 7:30 a.m., Plaintiff informed Jackson that his cell's toilet was running. At 10:14 a.m., Lieutenant David Steel, who was conducting rounds, re-set the toilet, which seemed to fix the issue. Shortly thereafter, however, Plaintiff discovered that the toilet would not flush. Toilets at MCJ can be flushed via motion sensor by the inmate in the cell, or remotely via computer by the correctional officer in the pod. Plaintiff asked Jackson to flush the toilet via computer, and Jackson complied. However, instead of flushing down, the water rose. At some point during the day, when inmates were returned to their cells, Plaintiff slipped and fell in the overflowed toilet waste.

Jackson saw Plaintiff several times over the course of the day. The parties dispute whether Plaintiff told Jackson that his toilet was not

---

deadline had passed, but this is unpersuasive. *Id.* at 10. Defense counsel provided Defendants' full names on March 20, 2018, a full month before the deadline to amend pleadings, (Docket #12 and #13), and Plaintiff could have requested further information about Defendant Velez any time before the close of discovery.

working. (Docket #33 ¶ 52). In any case, Jackson does not recall this, and concedes that the pod can be very busy during his shift, and he may have been distracted and forgotten. (Docket #22 ¶¶ 53, 65). While conducting rounds, Jackson did not observe Plaintiff's toilet overflow. He did not observe excrement on the floor of Plaintiff's cell, nor was he aware that Plaintiff had slipped and fallen in it. His shift ended 2:20 p.m., and he debriefed the second shift officer before leaving for the day.

The next morning, on January 22, Plaintiff informed Stacker-Williams that his toilet was not flushing. Stacker-Williams attempted to flush the toilet via computer, but this did not work. When Stacker-Williams checked on Plaintiff's toilet, it was not overflowing. Plaintiff explains that he had cleaned the soiled floor himself. Stacker-Williams states that if she had seen the toilet overflow, she would have moved Plaintiff to a different cell and called for a bio-hazard crew to clean up. At 11:15 a.m., she emailed correction officers Joel Neumann ("Neumann"), who was assigned to maintenance matters, and informed him that the toilet in Plaintiff's cell was not flushing. At 12:53 p.m., Neumann submitted a work order to the facilities department to address the issue. At 2:16 p.m., a plumber arrived to fix the toilet, and the issue was resolved. On January 23, Plaintiff was transported back to GBCI. Five days later, on January 28, he experienced flu-like symptoms and submitted a request for health services. No conclusions were ever drawn regarding whether Plaintiff's symptoms resulted from exposure to the clogged toilet. Plaintiff admits that it was only a "possibility" that his symptoms were from the conditions of the cell at MCJ. (Docket #33 ¶ 74).

3. **ANALYSIS**

The Supreme Court has interpreted the Eighth Amendment as requiring a minimum standard for the treatment of inmates by prison officials: prison conditions must not, among other things, involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). An inmate's constitutional challenge to the conditions of his confinement has an objective element and a subjective element. *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004).

First, a prisoner must show that the conditions at issue were "sufficiently serious" so that "a prison official's act or omission. . .result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and quotations omitted). Prison conditions may be "harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment." *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). The Eighth Amendment "does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001). Rather, "extreme deprivations are required to make out a conditions-of-confinement claim." *Turner v. Miller*, 301 F.3d 599, 603 (7th Cir. 2002) (citations and quotations omitted); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Second, even if conditions were sufficiently severe, the prisoner must also demonstrate that prison officials acted with "deliberate indifference" to the risk created by those conditions. *Wilson v. Seiter*, 501 U.S. 294, 302 (1991); *Whitman*, 368 F.3d at 934. "Deliberate indifference" means that the official knew that the inmate faced a substantial risk of serious harm from the condition in question, and yet disregarded that risk

by failing to take reasonable measures to address it. *Farmer*, 511 U.S. at 847; *Johnson v. Phelan*, 69 F.3d 144, 149 (7th Cir. 1995); *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008) (deliberate indifference arises when prison officials "ac[t] with the equivalent of criminal recklessness") (citations and quotations omitted). It is not enough for the inmate to show that the official acted negligently or that he or she *should* have known about the risk. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004); *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). Instead, the inmate must show that the official received information from which the inference could be drawn that a substantial risk existed, and that the official actually drew the inference. *Pierson*, 391 F.3d at 902. That is, "a plaintiff must establish that the official knew of the risk (or a high probability of the risk) and did nothing." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). In the end, it is "obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by [the Eighth Amendment.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold" of constitutional protections).

While it is "certainly unpleasant" that a toilet might be clogged for a day, this alone does not rise to the level of a constitutional violation. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) (finding no constitutional violation for foul smell and cockroach infestation); *cf. Johnson v. Pelker*, 891 F.2d 136, 139–40 (7th Cir. 1989) (finding a potential constitutional violation where a prisoner alleged that she was held for three days in a segregation cell that was smeared with human feces and had no running water). Plaintiff has not provided evidence that the toilet overflowed, much less than he slipped

in it and was forced to clean the mess himself.[3] Moreover, unlike the prisoner's allegations in *Johnson*, in this case Plaintiff was permitted to leave his cell, and the issue was resolved in a day. Given the brevity of the unpleasant condition and the lack of evidence that the toilet in fact overflowed, a reasonable jury could not find that these conditions of confinement are unconstitutional.

Moreover, even if Plaintiff had provided evidence that his cell had excrement all over the floor, there is no evidence that either Jackson or Stacker-Williams was deliberately indifferent to it because there is no evidence that either defendant was aware of the problem. Furthermore, while Jackson concedes that he may have forgotten about Plaintiff's complaint due to the busy nature of his shift, mere negligence does not support a finding of deliberate indifference. *Collignon*, 163 F.3d at 988. Additionally, the facts demonstrate that Stacker-Williams responded reasonably to the risk by notifying facilities management and securing a plumber to rectify the issue within hours of becoming aware that the toilet was clogged. In view of these facts, no reasonable jury could find that either defendant acted with deliberate indifference.

4.  **CONCLUSION**

In light of the foregoing, Defendants' motion for summary judgment must be granted, and the case dismissed with prejudice.

---

[3]In his opposition, Plaintiff claims that he was denied toilet facilities and that he was unable to drink water while locked in his cell. (Docket #32 at 9). These conditions were not alleged in the complaint, and there is no evidence in the record to support the allegations. Therefore, the Court will not consider them in its assessment of the conditions of confinement.

Accordingly,

**IT IS ORDERED** that Defendant Jackeline Velez be and the same is hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (Docket #21) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 11th day of June, 2019.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge